**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DENZEL D. MARSH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case: 1:26-cv-12570** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **UNIVERSAL PROTECTION SERVICE, LLC d/b/a ALLIED UNIVERSAL,** | ) | |
| | ) | |
| | ) | **Jury Trial Demanded** |
| **Defendant.** | | |

## COMPLAINT

Plaintiff, Denzel D. Marsh ("Plaintiff"), by and through the undersigned counsel, hereby files this Complaint against Universal Protection Service, LLC d/b/a Allied Universal ("Defendant"), and in support states as follows:

## NATURE OF PLAINTIFF'S CLAIMS

1. This lawsuit arises under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq* ("ADA"), seeking redress for Defendant's discrimination and harassment on the basis of Plaintiff's disability, Defendant's failure to accommodate Plaintiff's disability, and Defendant's retaliation against Plaintiff for engaging in protected activity under the ADA.

2. This lawsuit further arises under the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), seeking redress for Defendant's race-based discrimination and harassment, and Defendant's retaliation against Plaintiff for engaging in protected activity under Title VII.

## JURISDICTION AND VENUE

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331. This action is

authorized and instituted pursuant to the ADA, 42 U.S.C. § 12101 *et seq*, and Title VII, 42 U.S.C. § 2000e-5 *et seq*.

4. Venue of this action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391(b) insofar as Defendant operates and transacts business in this judicial district and the events giving rise to Plaintiff's claims occurred within this District.

**ADMINISTRATIVE PREREQUISITES**

5. All conditions precedent to jurisdiction have occurred or have been complied with.

6. Plaintiff filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") and Illinois Department of Human Rights ("IDHR"). (Attached hereto as Exhibit "A").

7. Plaintiff received a Notice of Right to Sue from the EEOC. (Attached hereto as Exhibit "B").

8. Plaintiff received a Letter of Determination from the EEOC. (Attached hereto as Exhibit "C").

9. Plaintiff filed this lawsuit within ninety (90) days of Plaintiff's receipt of the EEOC's Notice of Right to Sue.

**PARTIES**

10. At all times relevant to the allegations of this Complaint, Plaintiff, Denzel D. Marsh, was a natural person, over 18-years-of-age, who resided in Cook County, Illinois.

11. At all times relevant to the allegations of this Complaint, Defendant, Universal Protection Service, LLC d/b/a Allied Universal, was a limited liability company doing business in and for Cook County, Illinois, located at 303 E. Wacker Drive, Suite 1500, Chicago, Illinois 60601.

12. Plaintiff was employed by Defendant as an "employee" within the meaning of the ADA, 42 U.S.C. § 12111(4), and Title VII, 42 U.S.C § 2000e(f).

13. During the applicable limitations period, Defendant has had at least fifteen employees, has been an "employer" as defined by the ADA, 42 U.S.C. § 12101, *et seq.*, and Title VII, 42 U.S.C. § 2000e, *et seq.*, and has been engaged in an industry affecting commerce within the meaning of the ADA, 42 U.S.C. § 12111(5)(A), and Title VII, 42 U.S.C. § 2000e(b).

## BACKGROUND FACTS

14. Plaintiff worked for Defendant as an Assistant Account Manager from on or about April 4, 2025, until Plaintiff's unlawful termination on or about April 29, 2025.

15. Plaintiff was assigned to Defendant's account at the Art Institute of Chicago ("AIC").

16. At all times relevant to this Complaint, Plaintiff suffered from scoliosis and neuropathy.

17. Plaintiff's disabilities' symptomology consists of but is not limited to pain and physical limitations that are exacerbated by prolonged standing and by exposure to cold environments.

18. Plaintiff's disabilities substantially limit major life activities, such as standing.

19. Plaintiff's disabilities limit his ability to remain at a standing post for prolonged periods of time.

20. At all times relevant to this Complaint, Plaintiff was a "qualified individual" as defined under the ADA.

21. Plaintiff could perform the essential functions of his Assistant Account Manager position with or without reasonable accommodation, including relief from prolonged standing.

22. Plaintiff is Black/African American.

23. Defendant subjected Plaintiff to different terms and conditions of employment than others not within Plaintiff's protected classes.

24. Since at least April 7, 2025 through April 29, 2025, Defendant subjected Plaintiff to different terms and conditions of employment than others not within Plaintiff's protected classes and subjected Plaintiff to a hostile work environment on the basis of disability and race, violating the ADA and Title VII.

25. Beginning almost immediately after Plaintiff commenced his employment, Defendant's management, principally Plaintiff's supervisor, Deb Hindin ("Hindin"), subjected Plaintiff to an extraordinary and unjustified degree of scrutiny.

26. On April 7, 2025, Plaintiff received a call from an EEOC investigator and requested approximately fifteen (15) minutes to return the call. Plaintiff's supervisor, McCool ("McCool"), approved the request.

27. While Plaintiff was on the call, Hindin directed Rivera ("Rivera") to call Plaintiff repeatedly.

28. Upon Plaintiff's return, Hindin yelled at Plaintiff.

29. On April 8, 2025, Hindin again confronted Plaintiff in front of his coworkers, raised her voice, pointed toward Plaintiff's head in a manner Plaintiff perceived as insinuating something about his mental health, and sarcastically referenced Plaintiff's attorney.

30. Between April 9 and April 11, 2025, Rivera, acting at Hindin's direction, confronted Plaintiff regarding an alleged "mildew smell" that other employees did not detect.

31. During that same week, Hindin changed Plaintiff's work schedule approximately five (5) times.

32. When Plaintiff raised concerns about the scheduling practice and cited Illinois law, Hindin responded, "Show me," and threatened that the job might not be for Plaintiff if he did not accept the schedule.

33. On or about April 11, 2025, Rivera told Plaintiff that Hindin was “afraid he would not last.”

34. On or about April 11, 2025, Deb accused Plaintiff of arriving late — contrary to Plaintiff's understanding of the required start time, which other supervisors confirmed.

35. Deb interrogated Plaintiff about conversations with coworkers, his prior employment, and his training, and stated she did not know whether Plaintiff was telling the truth. Plaintiff received yet another schedule revision — his fifth that week

36. On or about April 14, 2025, when Plaintiff disclosed to Rivera that his mother had recently passed away, JP Dries overheard the conversation and joked that Plaintiff could list him as an emergency contact if Plaintiff "paid him," prompting laughter from those present

37. On or about April 16, 2025, despite having been hired as an Assistant Account Manager, Plaintiff was assigned to stand at an open security post for approximately three (3) hours.

38. The prolonged standing exacerbated Plaintiff’s scoliosis and neuropathy.

39. That day, Plaintiff called Hindin, explained that he was struggling because of a disability, and asked how long he would be required to remain at the post.

40. During the phone call, Director Andy Yocum stated to Plaintiff, “If you mentioned your disability in your interview process, we would have declined your employment."

41. Hindin also responded, “Well I guess this might not be the job for you.”

42. Plaintiff requested Human Resources (“HR”) and supervisor contact information, Hindin responded: “So you want to go the route huh?”

43. Plaintiff thereafter complained to HR, expressly raised concerns about anticipated retaliation, and was provided accommodation paperwork.

44. HR instructed Plaintiff to complete a detailed written timeline on company time.

45. On April 20, 2025, Plaintiff returned to work with accommodation paperwork completed by his treating physician, requesting reasonable accommodation for his disability, including relief from prolonged standing.

46. Rather than engaging in a good-faith interactive process or implementing any accommodation, Defendant's management directed Plaintiff to work in a cold conference room, an environment Plaintiff explained aggravated his disability.

47. Hindin then changed Plaintiff's assignment to patrolling the floor and issued yet another revised schedule.

48. By April 23, 2025, a newly promoted or hired supervisor had been placed at Plaintiff's desk while Plaintiff's accommodation request remained unresolved.

49. Plaintiff also discovered that his Helias registration had been deleted.

50. Defendant was aware of Plaintiff's disabilities and need for accommodation no later than April 16, 2025.

51. Defendant did not discuss potential task redistribution or temporary modifications.

52. Defendant did not propose any effective alternative accommodation.

53. Temporary task adjustments were feasible within Defendant's operations.

54. Defendant's actions constituted disability-based discrimination and harassment.

55. Defendant did not engage in a meaningful interactive process regarding Plaintiff's request for accommodation.

56. Defendant failed to accommodate Plaintiff's disability, despite Plaintiff's reasonable request for relief from prolonged standing.

57. Plaintiff engaged in protected activity by disclosing his disability.

58. Plaintiff engaged in protected activity by requesting reasonable accommodation.

59. Plaintiff also reported and opposed disability discrimination and harassment to Defendant.

60. Defendant subjected Plaintiff to disparate treatment, harassment, and adverse employment actions based on his race, including but not limited to the sustained pattern of scrutiny, false accusations, hostile management conduct, and termination described herein.

61. Similarly situated employees outside of Plaintiff's protected class were not subjected to the same treatment.

62. Defendant's actions constituted race-based harassment.

63. Plaintiff reported and opposed the discrimination and harassment to Defendant, including through his complaints to HR, his April 17, 2025, written timeline.

64. On April 24, 2025, Plaintiff sent a direct email to HR informing them that he had officially filed a complaint with the IDHR.

65. That same day, Rivera falsely accused Plaintiff of sleeping on the job.

66. Plaintiff pointed out to Rivera that this accusation is just hours after Defendant received written notice of Plaintiff's IDHR charge.

67. Plaintiff denied the accusation, and McCool, who was present, contradicted Rivera's accusation, confirming that Plaintiff had been completing training with headphones in.

68. On April 25, 2025, after Plaintiff reported a safety issue involving locked emergency exit doors at AIC, Dries summoned Plaintiff to meet at Defendant's main office.

69. Plaintiff emailed Dries directly, expressing discomfort meeting alone given Plaintiff's prior complaints against Dries.

70. Shortly thereafter, Dries prohibited Plaintiff from returning to AIC.

71. Ultimately, on or about April 29, 2025, Hubatch terminated Plaintiff's employment

on the basis of Plaintiff's disability, race, and engaging in protected activity as described above.

72. Defendant cited the sleeping-on-the-job allegation as the basis for Plaintiff's termination.

73. Defendant's stated reason for terminating Plaintiff is pretextual.

74. The purported justification for termination was unlawful discrimination based on disability and race, or because Defendant perceived Plaintiff as disabled.

75. Plaintiff was retaliated against, and his employment was ultimately terminated for opposing unlawful discrimination and for exercising his protected rights.

76. Plaintiff met or exceeded Defendant's performance expectations during the entire duration of his employment.

77. Plaintiff was targeted for termination because of his disability, race, and for engaging in protected activity.

78. Plaintiff suffered multiple adverse employment actions including but not limited to being removed from his assignment at AIC and terminated.

79. There is a basis for employer liability for the discrimination, harassment, and retaliation that Plaintiff was subjected to.

80. Plaintiff can show that he engaged in statutorily protected activity – a necessary component of his retaliation claim, because Plaintiff communicated with an EEOC investigator, disclosed his disability, requested reasonable accommodation, complained to HR about harassment and discrimination and anticipated retaliation, submitted a written timeline documenting Hindin's conduct.

81. The temporal proximity between Plaintiff's protected activity and his termination gives rise to a strong inference that the termination was motivated by his protected class and

engagement in protected activity.

82. At all relevant times, Hindin was Plaintiff's supervisor and Hubatch was Defendant's Regional Vice President, and managerial employees of Defendant have the authority to make and implement final employment decisions, including the authority to terminate Plaintiff's employment.

83. Accordingly, because unlawful discrimination and retaliation were carried out by Plaintiff's supervisor and Defendant's managers acting within the scope of their employment, Defendant is strictly liable for the discriminatory conduct and termination decision.

**COUNT I**
**Violations of the Americans with Disabilities Act**
**(Disability-Based Discrimination)**

84. Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

85. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's disability, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*. ("ADA").

86. Plaintiff was a member of a protected class under the ADA due to Plaintiff's disability.

87. Plaintiff was a qualified individual with a disability under the ADA.

88. Plaintiff met or exceeded performance expectations.

89. Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

90. Defendant terminated Plaintiff's employment on the basis of Plaintiff's disability and protected activity.

91. Defendant's conduct toward Plaintiff illustrated a willful and/or reckless violation of the ADA.

92. Defendant acted in willful and/or reckless disregard for Plaintiff's protected rights.

93. Under the ADA, Defendant is strictly liable for Hindin's and Hubatch's unlawful discrimination and harassment.

94. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

**COUNT II**
**Violation of Americans with Disabilities Act**
**(Disability-Based Harassment)**

95. Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

96. By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices and harassed the Plaintiff on the basis of Plaintiff's disability, in violation of Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq*. ("ADA").

97. Plaintiff was a member of a protected class under the ADA due to Plaintiff's disability.

98. Defendant knew or should have known of the harassment.

99. The disability-based harassment was severe or pervasive.

100. The disability-based harassment was offensive subjectively and objectively.

101. Defendant acted in willful and reckless disregard for Plaintiff's protected rights.

102. Under the ADA, Defendant is strictly liable for Hindin's and Hubatch's unlawful discrimination and harassment.

103. As a direct and proximate result of the harassment described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of

enjoyment of life.

**COUNT III**
**Violation of Americans with Disabilities Act**
**(Failure to Accommodate)**

104. Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

105. By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices by failing to accommodate Plaintiff's disability in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq*. ("ADA").

106. Plaintiff was a member of a protected class under the ADA due to Plaintiff's disability.

107. Plaintiff was a qualified individual with a disability under the ADA.

108. Plaintiff was qualified for their position with or without reasonable accommodation.

109. Defendant was aware of the disability and the need for accommodation.

110. Defendant failed to engage in the interactive process to determine the appropriate accommodation after Plaintiff requested reasonable accommodation.

111. Plaintiff's reasonable accommodation that was requested was not an undue burden on Defendant.

112. Defendant did not accommodate Plaintiff's disability.

113. Defendant acted in willful and/or reckless disregard for Plaintiff's protected rights.

114. As a direct and proximate result of the failure to accommodate described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT IV
**Violation of Americans with Disabilities Act**
**(Retaliation)**

115. Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

116. By virtue of the conduct alleged herein, Defendant retaliated against Plaintiff based on Plaintiff disclosing his disability, requesting reasonable accommodation, and reporting disability-based harassment and discrimination, thereby violating the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.* ("ADA").

117. Plaintiff was a member of a protected class under the ADA due to Plaintiff's disability.

118. During Plaintiff's employment with Defendant, Plaintiff disclosed his disability, requested reasonable accommodation, complained to HR about disability-based harassment and discrimination, submitted a written timeline documenting Hindin's conduct, and disclosed that he had filed a complaint with the IDHR.

119. As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under the ADA.

120. In response to Plaintiff's complaint, Defendant failed to conduct a prompt, thorough and objective investigation of Plaintiff's complaint of disability-based harassment or discrimination.

121. Defendant also failed to take necessary precautions to prevent further recurrences of the discriminatory or harassing conduct complained of by Plaintiff.

122. Plaintiff suffered an adverse employment action in retaliation for engaging in protected activity.

123. Specifically, Plaintiff was ultimately terminated after he engaged in protected activity.

124. Defendant terminated Plaintiff's employment on the basis of Plaintiff's disability.

125. Defendant's retaliatory conduct toward Plaintiff illustrated a willful and/or reckless violation of the ADA.

126. As a direct and proximate result of the retaliation described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

**COUNT V**
**Violation of 42 U.S.C. §1981**
**(Race-Based Discrimination)**

127. Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

128. 42 U.S.C. § 1981, as amended ("Section 1981), guarantees persons of all races, colors, and national origin the same right to make and enforce contracts, regardless of race, color, or national origin. The term "make and enforce" contracts includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

129. Defendant's conduct against Plaintiff's race amounts to a pattern or practice of systemic race discrimination that constitutes illegal, intentional race discrimination in violation of 42 U.S.C. § 1981.

130. Plaintiff was subjected to and harmed by Defendant's systemic and individual discrimination.

131. Defendant's unlawful conduct resulted in considerable harm and adverse employment action to Plaintiff and Plaintiff is therefore entitled to all legal and equitable remedies under § 1981.

132. As a direct and proximate result of the race-based discrimination described above,

Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

**COUNT VI**
**Violation of Title VII of the Civil Rights Act of 1964**
**(Race-Based Discrimination)**

133. Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

134. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII").

135. Plaintiff was a member of a protected class under Title VII due to Plaintiff's race, Black/African American.

136. Plaintiff was qualified for his position as Assistant Account Manager.

137. Plaintiff met or exceeded performance expectations.

138. Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

139. Defendant terminated Plaintiff's employment on the basis of Plaintiff's race and protected activity.

140. Defendant acted in willful and reckless disregard for Plaintiff's protected rights.

141. Under Title VII, Defendant is strictly liable for Hindin's and Hubatch's unlawful discrimination and harassment.

142. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

**COUNT VII**
**Violation of Title VII of The Civil Rights Act of 1964**
**(Race-Based Harassment)**

143. Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

144. By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices and subjected Plaintiff to race-based harassment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII").

145. Plaintiff was a member of a protected class under Title VII due to Plaintiff's race, Black/African American.

146. Defendant knew or should have known of the harassment.

147. The race-based harassment was severe or pervasive.

148. The race-based harassment was offensive subjectively and objectively.

149. The race-based harassment was unwelcome.

150. Defendant acted in willful and reckless disregard for Plaintiff's protected rights.

151. Under Title VII, Defendant is strictly liable for Hindin's and Hubatch's unlawful discrimination and harassment.

152. As a direct and proximate result of the race-based harassment described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

**COUNT VIII**
**Violation of Title VII of the Civil Rights Act**
**(Retaliation)**

153. Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

154. By virtue of the conduct alleged herein, Defendant retaliated against Plaintiff based on Plaintiff reasonably opposing race-based discrimination and harassment, thereby violating Title

VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII").

155. Plaintiff was a member of a protected class under Title VII, due to Plaintiff's race, Black/African American.

156. During Plaintiff's employment with Defendant, Plaintiff reasonably complained and opposed Defendant's conduct that constituted race-based discrimination and harassment.

157. As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under Title VII.

158. In response to Plaintiff's complaint, Defendant failed to conduct a prompt, thorough, and objective investigation of Plaintiff's complaint of race-based discrimination and harassment.

159. Defendant also failed to take necessary precautions to prevent further recurrences of the discriminatory and harassing conduct complained of by Plaintiff.

160. Plaintiff suffered an adverse employment action in retaliation for engaging in protected activity.

161. Specifically, Plaintiff was ultimately terminated after he reasonably opposed Defendant's race-based discrimination and harassment.

162. Defendant terminated Plaintiff's employment on the basis of Plaintiff's race.

163. Defendant's retaliatory conduct toward Plaintiff illustrated a willful and/or reckless violation of Title VII.

164. As a direct and proximate result of the above-alleged willful and/or reckless act of Defendant, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Honorable Court find in Plaintiff's favor and against Defendant as follows:

a. Back pay with interest;

b. Payment of interest on all back pay recoverable;

c. Front pay;

d. Loss of benefits;

e. Compensatory and punitive damages;

f. Reasonable attorneys' fees and costs;

g. Award pre-judgment interest if applicable; and

h. Award Plaintiff any and all other such relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests that all issues be submitted to and determined by a jury.

Dated: October 14, 2026.

*/s/ Chad W. Eisenback*
**CHAD W. EISENBACK, ESQ.**
**NATHAN C. VOLHEIM, ESQ.**
**CHASIDY K. CLARK, ESQ.**
**SULAIMAN LAW GROUP, LTD.**
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone: 630-575-8181
ceisenback@atlaslawcenter.com
nvolheim@sulaimanlaw.com
cclark@atlaslawcenter.com
*Counsel for Plaintiff*